SECURITY SAVINGS BANK & TRUST CO. *v.* ST LOUIS CHEMICAL CO.

1. CORPORATIONS — REORGANIZATION — CONFLICT OF LAWS — FOREIGN CORPORATIONS.

   A New Jersey corporation cannot effect a reorganization under the laws of Michigan, although it may transfer its assets and business to a Michigan corporation of the same name for a consideration to be agreed upon, the new company assuming the obligations of the old.

2. MORTGAGES — BONDS — ISSUANCE — SUCCESSOR CORPORATION — FORECLOSURE.

   And the transfer of assets from the New Jersey company to the Michigan corporation having the same name and assuming its indebtedness, did not invest the new organization with authority to issue unsold bonds of the original corporation, remaining in its treasury, so as to place creditors receiving them on an equal basis with prior bondholders of the New Jersey company.

Appeal from Gratiot; Searl, J. Submitted June 18, 1912. (Docket No. 140.) Decided October 1, 1912.

Bill by the Security Savings Bank & Trust Company against the St. Louis Chemical Company and another for the foreclosure of a trust mortgage. From a decree denying petitions of Martha H. Wright and others claiming an interest in the resulting fund as bondholders, petitioners appeal. Affirmed.

*N. O. Griswold,* for appellants.

*Stone & Watson,* for appellees.

OSTRANDER, J. A New Jersey corporation doing business in Michigan voted December 28, 1904, an issue of $100,000 of bonds, 200 in number, secured by mortgage on the property of the company and running to the Security Savings Bank & Trust Company, trustee. The bonds were certified by the trustee, and returned to the mortgagor, by which 112 were sold. Of the remaining 88 bonds, 40 were pledged by the mortgagor to the Old National Bank of Grand Rapids, Mich., as security for a line of credit limited to $25,000. The directors of the mortgagor company on May 15, 1907, took action evidenced by the following extract from the record:

"Resolved that whereas the stockholders of this company at a special meeting duly called and held at the office of the company at East Orange, New Jersey, on the 3rd day of May, 1907, by a vote of more than three-fourths of the stock issued and outstanding, passed the following resolution: Resolved, that this company sell all its real and personal property, plants, warehouses, leases, tank car equipment, good will and all of its assets of whatever description and wherever located, to a new company to be organized by stockholders of this company under the laws of the State of Michigan for and in consideration of the sum of $60,000 in cash and the assumption by the said new company of the bonded indebtedness of this company and all of its other indebtedness in excess of said bonded indebtedness plus $60,000 that is admitted to be due at

the time of the sale; and further resolved, that the board of directors of this company be and they hereby are authorized and directed to effect this sale as soon as the said new company is organized and ready to transact business; and further resolved, that the actual time, place and other details of the said sale be left to the board of directors of this company to determine and arrange; and, whereas, the holders of more than three-fourths of the stock issued and outstanding have given their written consent to the sale of the entire assets of the company, which written consent is filed with the records of the company; and, whereas, the financial condition of the company is such that it cannot continue to operate its plant and maintain its business, and its assets are of such a nature that a failure and foreclosure of the bonded indebtedness would result in a total loss to stockholders and a heavy loss to creditors; and, whereas, the proposed sale is to a new corporation to be organized under the laws of the State of Michigan by stockholders of this company with the privilege extended to all the stockholders of this company to subscribe to stock on the same terms and conditions; and, whereas, this board is convinced that this sale is for the protection of the creditors of the company and will afford all stockholders an equal opportunity to protect their investment and is for the best interests of all concerned: Now, therefore be it resolved, that the said sale be authorized and is hereby authorized and the president of the company be authorized and directed, and he is hereby authorized and directed to execute the deed hereinafter set forth in full, conveying the property, rights and franchises of this company to L. B. Alger of St. Louis, Michigan, and the secretary of the company be authorized and directed, and he is hereby authorized and directed to affix the seal of this company to the said deed, and attest the same."

Pursuant thereto, a transfer of all property of the said company was made to a third person, who, in turn, transferred the same to a company organized in the State of Michigan, under its laws, of the same name as the selling company and composed of stockholders of the selling company. The New Jersey corporation filed with the secretary of State of Michigan formal notice that it had ceased to carry on business in the State by reason of a transfer

of its "entire assets, property and rights located in said State." The Michigan corporation was organized May 16, 1907, with an authorized capital of $300,000 (one-half that of the New Jersey company), $30 being paid in in cash and $299,970 in property acquired from the New Jersey company. Its business was the same as that of the New Jersey company. When the assets of the New Jersey company were transferred to the Michigan company, it owed the Old National Bank of Grand Rapids $18,000, evidenced by two notes, one for $3,000 and one for $15,000; this amount being included in the sum of $56,466.84, which was the total of debts, exclusive of bonded debt, owing by the New Jersey company. The Old National Bank was paid and surrendered up the bonds held by it as security. It returned 11 of them ($5,500 par value) to the secretary of the Michigan company, and sent the remainder, by direction of said company, to other banks. The Michigan company defaulted interest on its bonds and was otherwise in default, and the trustee foreclosed the trust mortgage. The mortgaged property was sold, producing for distribution among bondholders something more than $23,000. Creditors of the company, to whom 31 bonds in excess of the 112 sold by the New Jersey company had been pledged as security, who had sold them in default of payment of their debts, petitioned the court to be allowed to share *pro rata* in the distribution of the fund. This was refused, and these creditors have appealed to this court. The question presented is whether these bonds stand equally secured by the mortgage given by the New Jersey company. The trial judge was of opinion that neither reason nor precedent supported the proposition that "officers of a new corporation can give validity to unissued bonds of another corporation, even though it succeeded to all its assets and was bound to pay all its debts."

Appellants contend that the New Jersey company was reorganized, the new or second company merely succeeding to all of the property and rights of the old company.

One of the rights of the old company was, it is said, to sell for cash, or to pledge as security, any of its unissued bonds.

It is manifest that the original corporation was not reorganized. It was a foreign corporation, and its right to reorganize would derive from New Jersey laws. It had never sold the 31 bonds in question. The Michigan corporation never voted to issue, or issued, any bonds. It assumed the mortgage debt incurred by the old company. It might have made a new and second mortgage of corporate property to secure a new issue of bonds, but could not deprive the holders of bonds secured by the first mortgage of their prior lien.

The decree must be affirmed, with costs to appellees.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.